[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 11248
The parties were married on June 19, 1988, in Waterbury, Connecticut. The birth name of the plaintiff was Velezis. There are no children born of this marriage, and the parties have resided in the State of Connecticut for more than one year, conferring upon this court jurisdiction over the issues. It is clear from the testimony that this marriage has irretrievably broken down. The court enters a decree dissolving the marriage.
The parties separated on September 1, 1993, when this action was brought. She is 33 and a high school graduate. She pursued her education, and in 1982 she received an Associates Degree as a legal secretary. The parties knew each other for a period of time before their marriage. The plaintiff worked as a legal secretary at Carmody and Torrance for ten years where she accrued employment benefits.
The parties had not seen each other for some time, but became reacquainted while she had that employment. He was working at Town Pizza in Oakville, Connecticut. At that time, he told her he had an ownership interest in that business, which actually was owned by his parents. At the time of the marriage, he was employed at Seven Villages Restaurant, a business owned by her parents. He worked there for two and one-half years. The defendant claims that he was induced to work for her parents because of an expectation that he would receive an ownership interest in that business.
At the time of the marriage, the parties resided in the home at 18 Freedom Road, Middlebury. It had been purchased by the parties prior to the marriage from the plaintiff's aunt, for One Hundred, Fifty Thousand ($150,000.00) Dollars. Work needed to be done on the property and was done during the marriage. The plaintiff continues to reside in that home. The monies used in addition to the mortgage came from their respective savings, and from her parents. The mortgage was originally in the amount of Seventy-three Thousand ($73,000.00) Dollars. The defendant contributed Five Thousand ($5,000.00) Dollars, the plaintiff contributed Twenty-seven Thousand (($27,000.00) Dollars, and the plaintiff's parents contributed Fifty Thousand ($50,000.00) Dollars.
The subject of the monies contributed by her parents was the subject of testimony. The parties refinanced the original CT Page 11249 mortgage, by reducing the principal in a mortgage to First Federal. At the time of the refinance, in 1989, her parents contributed approximately Five Thousand ($5,000.00) Dollars to close. The interior repairs to the home were done, including new cabinets in the kitchen, an new bath, carpeting, and painting. All of the work was done by the parties. The plaintiff conceded in cross-examination that they had also added a pool and deck, which she claimed was from wedding money.
The tax returns of the parties were made exhibits, as were the corporate tax returns, for Yorgo, Inc., by agreement of the parties. (Plaintiff's Exhibits 3 through 12, inclusive) Yorgo, Inc. ceased doing business in February of 1994.
The defendant continued in the employ of the plaintiff's parents at their restaurant until the parties purchased a restaurant business in Middlebury, Connecticut, known as Middlebury Restaurant and Pizza, (Yorgo, Inc.) in August of 1991. The former owner is a distant relative of the plaintiff. The plaintiff had continued in her sole employment for Carmody and Torrance. The plaintiff, before testifying, produced witnesses to an extra-marital affair that the defendant had with one of his waitresses. The waitress admitted having an affair with the defendant during the period after the purchase of the restaurant until February of 1992. The defendant, when confronted during the marriage, consistently denied the affair.
The finances of the parties were primarily handled by the plaintiff. She testified that her husband conducted all of the negotiations for the purchase of the Middlebury Restaurant. The purchase was for Three Hundred, Fifty Thousand ($350,000.00) Dollars, of which One Hundred Thousand ($100,000.00) Dollars would be in cash, and the balance in the nature of a Promissory Note. The cash downpayment came from her parents, and her uncle.
The plaintiff worked for Attorney Garrett Moore, and received overtime for work performed. Thereafter she went to the restaurant to hostess six to seven nights per week. The hours would vary, but she worked 45 to 50 hours per week at the restaurant.
During 1989, she felt their relationship was excellent. In the first year after they purchased the restaurant, he became withdrawn and refused to talk to her. He had been a Canadian CT Page 11250 citizen at the time of the marriage, but has family in Waterbury. Their sexual relationship changed after they purchased the restaurant. He left home after work to go out, and their sexual relationship dwindled. She testified that it ended. She tried to talk to him, and she went to counseling. He made arrangements to see Kitty Bidet, and she went on two separate occasions.
When there was a request that they go together, she asked him why he did not come, and while she did not recall his direct response, it was an excuse. They made another appointment to go together, and again he failed to attend with her. Again, he made an excuse as to why he was not there.
The plaintiff testified that she stayed at the restaurant until closing, and she did go out with the group for drinks after work. Many times she was too tired to go out with them, so she went home.
The parties did take separate vacations during the marriage. During February of 1992, she went to Aruba with her cousin, and to Cape Cod in August of that year. The defendant also went on vacation, and she testified that they did so because they could not leave the restaurant. She denied any inappropriate behavior with men during those vacations. She testified that he gave her gifts, and had been good to her, but that she had paid all of the expenses of the family home. On cross-examination, she denied that the defendant gave her his pay check from Town Pizza, at the time they first purchased their home. Her financial affidavit discloses Twenty Thousand ($20,000.00) Dollars of jewelry.
During cross-examination, she denied that he had asked her to spend more time alone with him, after they commenced the restaurant business. She also denied that he had been upset that she intended to go to Aruba, alone, with her cousin. She testified that the marriage was irretrievably broken down in August of 1993, one month before she filed this action. She denied that she dated other men during their marriage, and denied that she contributed to the breakdown of the marriage.
She denied his claim that she abused cocaine, would not spend time alone with him, nagged him, spent too extensively, or that her material needs were insatiable. CT Page 11251
The plaintiff testified that after she started receiving phone calls from the waitress' boyfriend, he exhibited violence by punching holes in walls, pushing her around, and threatening her. He had firearms in the home, and did not have a permit. One month before she served him, she told him to get the guns out of the house and he removed them. On cross-examination, she denied that she had ever struck him, and agreed that she had not asked for a restraining order, and the one time she had called the police no arrest was made.
On the day the divorce was served, she changed the locks on the doors of the family home, and installed an alarm system in the home. She did not give him the security code for the home. The plaintiff asked him to leave for a couple of days, but denied that her uncle would "kill him", if he did not leave.
At the time they were to purchase the restaurant, the defendant and the plaintiff went to her parents to borrow the funds needed to purchase the restaurant. The plaintiff claims that the defendant said he would pay them back. The plaintiff claims that the defendant also said he would pay them back for money advanced to purchase the home. The money was advanced to them in cash. She testified that each time, the cash was picked up by the defendant.
On cross-examination, the plaintiff conceded that she had not added bonus income to her stated income, which yeilded [yielded] her over Nine Hundred ($900.00) Dollars per week in 1994. She has received one bonus in 1995 in the amount of Four Thousand ($4,000.00) Dollars. The property in Middlebury was purchased by the parties jointly one and one-half years prior to the marriage. When asked concerning her consultation originally concerning the divorce, she conceded that she had seen her attorney in September of 1992. On August 18, 1993, she signed a promissory note to her parents for Fifty Thousand ($50,000.00) Dollars.
When the parties purchased the restarant [restaurant], they did not sign a note, or any security for the loan of Seventy-five Thousand ($75,000.00) Dollars from her parents. She did not sign a note at that time. However, on December 31, 1993, she gave her parents a mortgage on the Middlebury home in the face amount of One Hundred, Twenty-five Thousand ($125,000.00) Dollars.
The plaintiff denied that the parties had a joint savings CT Page 11252 account for the down payment for their home. She conceded that she had withdrawn Four Thousand ($4,000.00) Dollars from a joint account at the time of their separation, and placed into an account solely in her own name. She denied that his funds were thereafter put into her account in August of 1993. (Defendant's Exhibits 7 and 8)
At the time of their marriage, she was vested in her 401K Plan with Carmody and Torrance, but could not say what the value of that was.
The defendant is 34 years old, and claims injury from an automobile accident. He is still under medical care for disk problems, and was out of work for four and one-half months. He continues to have back problems and it is difficult for him to walk and sit, if he works at his painting job. He had been a UPS driver and delivery person, and that caused him pain. He wears a support belt and it helps. During the past ten weeks, he has been employed as a carpenter (class 2) doing light framing, awnings and the like. He is paid $10.25 per hour and has been guaranteed forty (40) hours.
The defendant is a high school graduate, also from Holy Cross in Waterbury, as was the plaintiff. He managed and cooked at Town Pizza from the time of his high school graduation to 1985, when he moved to his parents' restaurant in Ansonia. He began working for the plaintiff's parents at Seven Villages in 1987. He testified that her father asked him to join him and another partner in reopening Seven Villages. He also gave up more income and the ability to take over ownership of Town Pizza.
The defendant testified that he thought there would be advantages in working for her parents, in that he would be able to expand with them, and acquire an interest in that business. He worked there just under three years, and worked approximately 48 to 52 hours per week. He was dissatisfied about not being made a partner, and then he explored the possibility of acquiring a restarant [restaurant]. Two months after he claimed her parents offered to compensate him for his work by assisting him in acquiring a restaurant property, he met with her cousin concerning the Middlebury location.
In April or May of 1991, he decided to attempt to acquire the restaurant business, and the parties went to her parents' CT Page 11253 home to discuss that with them. They discussed purchased price and later, in July, he received Seventy Thousand ($70,000.00) Dollars. The sum was given to him in the form of cash. It was to be put towards the restaurant. No terms of repayment were discussed, and the defendant claimed that the monies were a gift. The plaintiff did not discuss with him whether this was a loan or a gift.
He testified that if he had the decision to make today, he would not have purchased a restaurant at all, because it ruined his marriage. Gross receipts in the restaurant in 1992 were approximately $250,000.00. and in 1993 $229,000.00. The defendant submitted the corporate tax returns for Yorgo, Inc, (Pl. Exh. 11 and 12), as well as his personal return for 1993.
He claimed that his parents would have allowed him to take over their Oakville restaurant, but he was induced to leave his parents' business to join the plaintiff's parents' business, Seven Villages, on the expectancy of higher salary in the future as well as an ownership interest. He testified that he was disappointed when that did not occur. He continued to work regardless of his disappointment, but ultimately, in June of 1991, he left for Middlebury Pizza.
The defendant claimed that the downpayment from the plaintiff's parents was a gift. They did not sign a promissory note contemporaneously with the restaurant purchase. The debt to her uncle, was conceded to be a debt, and is a debt currently outstanding, and listed on his financial affidavit. The balance of the purchase price was by note, secured to John Nicholas by reversionary interest in the restaurant business and contents, which has been surrendered without court process to Mr. Nicholas. The defendant testified that he had not been sued for any further funds by Mr. Nicholas, and did not expect any proceeding to be commenced.
He classified the restaurant as "top shelf", and that he did all functions at the business. In 1992, gross receipts were approximately Two Hundred, Fifty Thousand ($250,000.00) Dollars. The gross receipts of the restaurant increased somewhat in 1993, but he failed to meet weekly payments obligations to CLP, and they shut off his power. He said that storms and other businesses opening contributed to the knowledge that the parties were having marital difficulties, leading to a significant loss of revenues. CT Page 11254
He owes other debts on account of the business, all of which are listed on the financial affidavit. He claims that he does not know what debts she may be jointly and severally liable on, except that she did sign a note to her uncle and her parents. He conceded that she worked thirty-five hours per week until August, 1993. He claimed that she stopped working because she did not want to anymore.
He conceded that the waitress witnesses did work at the restaurant but that Ms. Archambeault was fired for incorrect checks, and later brought the sexual harrassment claim against him. Ms. Foisi quit when she was asked to work on a weekend breakfast during a holiday weekend. The defendant claimed that this witness had a fight about working that weekend with the plaintiff. He denied sexually harrassing behavior, or the possession, in the restaurant, of pornographic materials.
The court finds his testimony on these issues to lack credibility. One witness admitted a sexual relationship with the defendant while in his employ, and the other witness, along with the plaintiff, were consistent in their descriptions of the behaviors engaged in by the defendant, and otherwise encouraged by him when engaged in by other employees. He obviously set the tone in the work environment, and was obvious in his extra-marital daliances within the work environment.
The defendant claims an accident-related back injury which will result in the bringing of a personal injury action. His medical specials are in the approximate amount of Seven Thousand ($7,000.00) Dollars. He has not yet finished treating, nor has he been assigned a permanency rating.
He claims an interest in the Freedom Road, Middlebury property. The property, acquired in 1987 was held jointly, and he signed the mortgage deed and note with the plaintiff. He was consistent in his testimony concerning how they financed the marital home, but claimed that the downpayment contribution from their respective parents were gifts, not loans. The bulk of their Twenty-six Thousand ($26,000.00) Dollars, he claimed, were from his funds from employment, which funds he gave to his fiancee for deposit into an account for that purpose. Prior to their marriage and cohabitation, he had been living with his parents. CT Page 11255
The parties worked on upkeep and enhancement of the home, and furnished the home from joint funds. He is asking that the home be sold, or that she buy out his interest within thirty (30) days of the date of judgment. He does not wish to receive, or pay alimony.
He claims that he should be entitled to one-half of her 410K Plan with Carmody Torrance because those funds were earned during the course of the marriage.
The defendant claimed that the marriage was irretrievably broken down in February of 1992. He claimed that she became inattentive in that she was sexually uninterested in him, would insult and degrade him, that he was a piece of sh — , and that if it had not been for her and her parents, he would still be trash like his parents. He claimed that she would not have lunch with him, even when he requested it. He claimed that she used cocaine during the marriage, and may still be using. On June 1, 1993, on her birthday, he observed her using cocaine, and he told her not to have it in their house. He claimed that she did not listen to his complaints.
In February of 1992, she came back from Aruba with her cousin, and there had been arguments. He was a little upset, but did not express that to her. He claimed she had mood swings, and that she was flirtatious. He claimed that she was used to having a lot of money and the material possessions that it could buy, and that she was not ever happy with what he was able to do for her. He claimed that he did not have sexual relationships with any other persons prior to February of 1992.
He claimed two incidents of domestic violence, once when he came in late and she hit him, and another time when he blocked a hit. He pushed her away after she hit him the first time. He admitted having six guns during the marriage, two rifles and four handguns for sport. He claimed that at the beginning of the marriage she expressed no opposition to his possession of guns, and in August of 1993, when she did object, his father removed the guns from the home. The defendant agreed that he was a Canadian citizen, and that he kept handguns without a permit at his home, and in the restaurant. He claimed he did not carry without a permit, even to make business deposits at night.
The defendant called Stephen Lynn of Danbury, Connecticut, CT Page 11256 who was a customer of the parties at their restaurant. On Friday nights, the witness went out after work with the defendant, and that on one-quarter of those occasions, the plaintiff would accompany them. The witness testified that when she did accompany them, and when he saw the parties together at the restaurant, he saw the plaintiff "nag" the defendant. The witness heard the plaintiff complain about the defendant's ownership of guns. He called her spoiled, spiteful, and vindictive. As a licensed Massage Therapist, she often asked him for a massage, and when he noticed the defendant's discomfort with that, he stopped, and she was unhappy about that.
The witness testified that he observed the plaintiff interact with men customers at the restaurant, and that she was openly flirtatious. The witness' testimony was of little value to the court. He was clearly a friend of the defendant's. He also was able to give scant information which could help the court in its fact-finding endeavor.
The defendant was cross-examined and agreed that he had testified earlier in his testimony that his health was fine. He has some pain in his lower back, and has some problems in lifting. The defendant hedged, and said some of the pain was worse in the intervening three weeks. He continues his employment as a carpenter.
He was presented with a letter he wrote to his wife at the time of their separation to counter his claims as to her insatiable desire for material things. (Pl. Exh. 13) The defendant writes therein that he did not listen to his wife's requests to stop buying her gifts. In a loan application, he misstated his income at Seven Villages, and in Middlebury. He countered that he had more than one salary while at Seven Villages. The witness also was questioned as to his work hours and his ability to work on the marital home. He was examined on the truthfulness of his 1993 income, which, as disclosed, was only Fifteen Hundred ($1,500.00) Dollars. His tax return, at best, could be called suspect. The cash payments made to this couple to invest in a home and a business are also of grave concern to the court.
When questioned concerning the date of the irretrievable breakdown of his marriage, and with his wife's "nagging" him concerning his infidelity with a witness, who found him in an CT Page 11257 automobile behind the restaurant with a waitress. The date of the infidelity, and the claimed date of the irretrievable breakdown of the marriage is a factual finding which this court must make from all of the testimony. The court finds that the evasive response of Ms. Patrillo, who worked at the restaurant until May of 1992, coupled with the testimony of the plaintiff, Ms. Archambeault and Ms. Foisi, require the court to conclude that the sexual relationship of the defendant with Ms. Patrillo occurred prior in time to his claim of irretrievable breakdown. The defendant himself conceded that that occurred in August of 1991. The court notes that fault is only one of the statutory criteria which may be used by the court in making its financial orders.
The defendant called Laura Champlain, another waitress at Middlebury Pizza. She worked nights until the restaurant closed. She testified that both parties were in the restaurant, he for longer periods than she. She described the atmosphere as laid back, because it was a family-restaurant. She did not recall any sexual harrassment, and filed a statement in his behalf in Ms. Foisi's sexual harrassment claim against the defendant. She testified that she was aware of pornographic materials in the kitchen. On cross-examination, she stated that she had heard other witnesses talking about it.
John Tzepos, of Waterbury, was called by the defendant. He met the defendant just before the parties marriage, and is a distant relative of the plaintiff. He was called to testify concerning a party attended by the defendant and some of his waitresses. He also testified concerning some of the complaints made by the defendant about the plaintiff. None of this testimony is sufficient to contradict the findings of the court on the issue of sexual infidelity.
The court finds further that the claimed debts to the parents of the plaintiff are not proven. The court finds that those payments were in fact gifts to the parties, and that any attempt to create a debt by a promissory note signed well into this litigation cannot be credited by the court. The court has indicated its concern with the extent of cash payments from the plaintiff's parents, along with its finding that the defendant willfully and knowingly understated his earnings during the marriage. This may subject both parties to IRS penalties.
Based upon the court's review of the evidence, and its CT Page 11258 findings in light of the relevant statutory criteria, the court makes the following orders with respect to the property of the parties:
1. REAL ESTATE: The defendant shall quit claim all of his right, title, and interest in property at 18 Freedom Road, Middlebury, Connecticut to the plaintiff. In exchange therefor, the plaintiff shall pay to the defendant the sum of Thirty Thousand ($30,000.00) Dollars. Such payment shall be made within sixty (60) days of the date of the judgement. The court has found that the advances by the plaintiff's parents were gifts to the parties, and the award of some of the equity in the home, absent that gift, represents the defendant's contribution of funds, in kind labor, and gift from his parents toward the acquisition of the property.
The plaintiff shall be responsible for any mortgage on the subject property, including any mortgage resulting from the late signing of a promissory note to her parents, and she shall hold the defendant harmless from any incumbrance on the marital property. The lien of the State of Connecticut, if it encumbers the property because of the non-payment of business taxes, shall be paid by the defendant, consistent with the orders of the court in the following paragraph.
2. BUSINESS DEBT. The defendant shall pay, and hold the plaintiff harmless from any business debt associated with Yorgo, Inc. The court has found that the defendant's sexual involvement with an employee was a major cause of the breakdown of this marriage, and the court further finds that his mismanagement of the business, including sexually harassing behaviors, caused the failure of his business. The defendant shall pay the sum of one dollar per year as alimony to secure the hold harmless. It is the intention of the court that the plaintiff be somewhat insulated from a bankruptcy, should the defendant chose to so file. It is further the intention of the court that the hold harmless agreement extend to indemnify her from the cost of defending any subsequent action against her by a creditor of Yorgo, Inc. or the defendant personally.
3. ALIMONY. No further periodic alimony shall be paid between the parties. The court finds that the defendant has understated his income in the past, and is underemployed in a profession that is inconsistent with his past experience, his contacts, and his ability to maximize his income. That decision CT Page 11259 was voluntary, and more strenuous physically, in light of his complaints of a back problem. His obvious expenditures, and his claim that he made only One Thousand, Five Hundred ($1,500.00) Dollars in a calendar year was impossible for the court to believe.
4. RETIREMENT ASSETS. The plaintiff shall retain her retirement account. She was fully and well-employed, and expended effort toward the restaurant business, by working nights and weekends. She made a very real contribution toward the acquisition of the business property, and a real contribution toward the maintenance of that business. The fact that the defendant is without retirement assets is due to his choice of how he would work, and how he would report his earnings. He is young and able to acquire retirement income in the future.
5. PERSONAL PROPERTY AND BANK ACCOUNTS. The parties shall keep any bank accounts currently in their respective names, to the exclusion of the other. The parties shall inventory the contents of the marital home, and if they have a disagreement as to disposition of the property, they shall hire a mediator at their own expense to assist them in making a decision. The court will retain jurisdiction of items having a present day value of Two Thousand ($2,000.00) Dollars or more.
6. ATTORNEYS' FEES. The parties shall be soley responsible for their respective attorneys' fees.
Based upon the request of the plaintiff, the court restores to her her birth name, Tina Velezis.
Judgment shall enter consistent with this opinion.
DRANGINIS, J.